**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Carlos Mejorado Carrillo,         )<br>             )<br>     Plaintiff,   )<br>             )<br>vs.           )<br>             )<br>Pima Community College District,  )<br>             )<br>     Defendant.  )<br>_____ ) | No. CIV 25-034-TUC-CKJ<br><br>**ORDER** |

Pending before the Court is the Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 17) filed by Defendant Pima Community College District ("PCCD"). Plaintiff Carlos Mejorado Carrillo ("Carrillo") and has filed a response (Doc. 18) and PCCD has filed a reply (Doc. 19). Also pending before the Court is Carrillo's Request for Self-Assessment of Conflict Pursuant to 28 U.S.C. § 455 (Doc. 21); no response has been filed. Carrillo has also filed a Notice of Filing Executive Session Agenda From Pima Community College Governing Board Meeting (Doc. 20) "to assist the Court in understanding the institutional context of Plaintiff's claims and to preserve this publicly available record for consideration during the Court's ongoing evaluation of the pending Motion to Dismiss." (Doc. 20, pp. 2-3).

I. *Request for Self-Assessment of Conflict Pursuant to 28 U.S.C. § 455* (Doc. 21)

Recusal is appropriate under the circumstances set forth in 28 U.S.C. 455 or "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him

1  or in favor of any adverse party, such judge shall proceed no further therein, but another judge
2  shall be assigned to hear such proceeding." 28 U.S.C. § 144. 28 U.S.C. § 455 requires that a
3  judge recuse herself in any proceeding in which her impartiality might reasonably be
4  questioned. A recusal is appropriate where a reasonable person with knowledge of all the facts
5  would conclude that a judge's impartiality might reasonable be questioned. *Yagman v. Republic*
6  *Ins.*, 987 F.2d 622 (9th Cir. 1993); *United States v. Hernandez*, 109 F.3d 1450, 1453 (9th
7  Cir.1997) (the standard for disqualification is the same under both 28 U.S.C. §§ 144 and 455).
8  Moreover, a judge shall disqualify herself "[w]here she has a personal bias or prejudice
9  concerning a party, or personal knowledge of disputed evidentiary facts concerning the
10 proceeding." 28 U.S.C. § 455(b)(1). *United States v. Johnson*, 610 F.3d 1138, 1147 (9th Cir.
11 2010).

12       Here, Carrillo does not suggest any actual or perceived bias/prejudice or appearance of
13 a lack of impartiality exists in this case. Rather, Carrillo requests this Court "evaluate whether
14 any actual or perceived conflict exists under § 455 and, if so, to consider recusal and
15 reassignment." Motion (Doc. 21, p. 3). This Court considers its duties and responsibilities
16 under the Code of Conduct for United States Judges, https://www.uscourts.gov/administration-
17 policies/judiciary-policies/ethics-policies/code-conduct-united-states-judges, and applicable
18 statutes, 28 U.S.C. §§ 144 and 455, to be paramount. As such, this Court consistently considers
19 whether any actual or perceived bias/prejudice or lack of impartiality exists in all proceedings
20 in which she is involved. As such, the Court considers not only its duty to recuse when
21 appropriate, but also the duty to not recuse when not appropriate. *United States v. Burger*, 964
22 F.2d 1065 (10th Cir. 1992) (just as the Court has a duty to recuse itself when appropriate, the
23 Court has a duty not to recuse itself if it is not appropriate).

24       This Court is not aware of any actual or perceived bias/prejudice or a lack of
25 impartiality, or the appearance thereof. *Liteky v. United States*, 510 U.S. 540, 548 (1994)
26 (court must also consider not only "the reality of bias or prejudice but its appearance"). The
27 Court finds recusal is not appropriate in this case.. *United States v. Morrison*, 153 F.3d 34
28

- 2 -

(2nd Cir. 1998) (court could confirm there was no basis to recuse herself).

The Court will grant the Carrillo's request to the extent it seeks consideration of the assignment of this case to undersigned as discussed herein, but declines to recuse herself.

II. *Carrillo's Allegations and Second Amended Complaint*

The Second Amended Complaint (Doc. 16) ("SAC") alleges Carrillo engaged in protected activity under Title IX by filing complaints with and requesting an investigation by the Pima Community College District ("PCCD") regarding the mishandling of Title IX-related records and the unauthorized dissemination of protected information.

The SAC alleges PCCD provided a misleading police report, which falsely implied Carrillo was under criminal investigation, to Northland Pioneer College ("NPC") on June 7, 2023, although PCCD knew the case had been dismissed. Carrillo alleges this resulted in NPC rescinding a job offer on June 1, 2023.[1] Additionally, an email from NPC's Manager of Emergency Services & Public Safety, which is attached as an exhibit to Carrillo's response, indicates NPC did not inquire about Carrillo until June 6, 2023. Response, Ex. (Doc. 18-1, ECF p. 1 of 12).

Additionally, Carrillo's CV 24-123 Verified Complaint states:

> 22. The investigator deemed Dr. Carrillo's denial of the allegations as evidence that his defense to the allegations was not credible.
>
> * * * * *
>
> 27. Following the erroneous determination by the Investigator, Dr. Carrillo appealed the decision, and before he was officially removed, Dr. Carrillo was offered and accepted a new position as the Associate VP and Chief Information Officer at Northland Pioneer College.
>
> 28. Upon information and belief, shortly after Dr. Carrillo accepted the new position at Northland Pioneer College, long before a final determination was made on the merits of the allegations that were being investigated, Defendant contacted Northland Pioneer College and informed them of the investigation to retaliate against Dr. Carrillo for participating in the Title IX investigation.

---

[1] Carrillo's Verified Complaint in CV 24-123, which is attached to PCCD's motion, states NPC demanded Carrillo withdraw his acceptance or otherwise face a recision of the job offer on June 2, 2023. Motion, Ex. (Doc. 17, ECF p. 57 of 63).

- 3 -

> 29. Upon information and belief, Northland Pioneer College's President contacted Dr. Carrillo on June 2, 2023, and due to Defendant's retaliation against Dr. Carrillo, demanded that Dr. Carrillo withdraw his acceptance of the new position or otherwise face a recission of the offer.

Motion, Ex. (Doc. 17, ECF pp. 56-7 of 63).

Carrillo's SAC alleges he subsequently discovered that third parties had alleged false allegations about rape, an open criminal case, and an arrest. "PCC was made aware of these false allegations and the misuse of its records, but it refused to take corrective action, [i.e., refused to correct the misleading report,] demonstrating deliberate indifference." SAC (Doc. 16, p. 3). Carrillo alleges PCCD unlawfully retaliated against Carrillo under Title IX, defamed Carrillo, and tortiously interfered with Carrillo's employment.

Carrillo seeks declaratory relief in that PCCD's "actions constituted unlawful retaliation under Title IX and defamation by failing to correct misleading records and disseminating harmful misinformation." SAC (Doc. 16, p. 5). Carrillo also seeks compensatory damages for lost wages, emotional distress, and reputational harm, and punitive damages to deter future misconduct. Additionally, Carrillo seeks injunctive relief to require PCCD to revise its Title IX and record-keeping policies.

III. *Motion to Dismiss* (Doc. 17)

PCCD seeks dismissal of Carrillo's claims for failure to state claims upon which relief can be granted, preclusion based on prior lawsuits against PCCD, and being barred by the notice of claim statute, A.R.S. § 12-821.01., and the statute of limitations, A.R.S. § 12-821.

The Court previously discussed the general requirements of a complaint and the need to allege sufficient "facts to state a claim to relief that is plausible on its facts[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[2] *See* Feb. 14, 2025, Order (Doc. 7,

---

[2]The holding in *Twombly* explicitly abrogates the well established holding in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

- 4 -

pp. 5-8), and will not repeat those standards here.

### A. *Reasonable Inference – Judicial Notice*

In considering a motion to dismiss, a court may consider "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). The Court takes judicial notice of the CV 24-123 Complaint, without assuming the truth of the matters asserted. *Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015) (finding that a court "may take judicial notice of the fact that an internet article is available to the public, but it may not take judicial notice of the truth of the matters asserted . . ."). However, the Court takes judicial notice that Carrillo, in filing that complaint and other documents, certified:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> * * * * *
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]
>
> * * * * *

Fed.R.Civ.P. 11(b). Additionally, Carrillo's filings in other cases were subject to the same certification standard.

Because Carrillo signed, filed, and submitted the February 29, 2024, Verified Complaint, the Court takes judicial notice that, to the best of his knowledge, information, and belief, Carrillo was certifying the factual contentions in that Verified Complaint had evidentiary support. Fed. R.Civ.P. 11(b)(3). Indeed, Carrillo did not specifically identify any factual contentions in that Verified Complaint that would only likely have evidentiary

---

support of his claim which would entitle him to relief."

- 5 -

support after a reasonable opportunity for further investigation or discovery. *Id*. This supports a determination/reasonable inference that Carrillo's knowledge, information, and belief that the June 2023 recission was a result of interference by PCCD existed at the time of the filing the February 29, 2024, Verified Complaint.

In light of the Court taking judicial notice that Carrillo certified the previous statements/allegations, including the allegations that (1) Carrillo was offered a position at NPC following the determination by an investigator that Carrillo was not credible, (2) Carrillo accepted the position at NPC, and (3) shortly after his acceptance NPC demanded Carrillo withdraw his acceptance or face a recission of the offer, the Court finds a reasonable inference exists that NPC rescinded the job offer, and Carrillo knew of the recission, in June 2023. *See Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (the non-conclusory factual content and reasonable inferences from that content must be "plausibly suggestive" of a claim).

### B. *Claims Upon Which Relief can be Granted*

PCCD asserts Carrillo cannot state claims upon which relief can be granted. PCCD also asserts Carrillo's claims are precluded based on *res judicata*, Carrillo's state law claims are precluded based on Arizona's Notice of Claim statute, Carrillo's state law claims are barred by Arizona's statute of limitations, and Carrillo's claims do not state sufficient facts to allege claims upon which relief can be granted.

#### 1. *Res Judicata*

PCCD asserts Carrillo cannot state law claims upon which relief can be granted based on *res judicata*; specifically, PCCD asserts dismissal is appropriate based on claim preclusion. The doctrine of *res judicata* includes two types of preclusion: claim preclusion

and issue preclusion.³  Claim preclusion "prohibits 'the parties or their privies from relitigating issues that were or could have been raised' in an action resulting in '[a] final judgment on the merits[.]'" *Herb Reed Enterprises, LLC v. Florida*, 736 F.3d 1239, 1245 (9th Cir. 2013), *citation omitted*; *see also* *Minjares v. State*, 223 Ariz. 54, 219 P.3d 264 (App. 2009) ("Under the doctrine of claim preclusion, a final judgment binds the parties and their privies 'when a former judgment on the merits was rendered by a court of competent jurisdiction and the matter now in issue between the same parties or their privities was, or *might have been determined in the former action*.'" *Minjares v. State*, 223 Ariz. 54, 58, 219 P.3d 264, 268 (App. 2009), *citation omitted*, *emphasis in original*.

PCCD asserts Carrillo filed suit against PCCD, as well as four individual defendants in September 2022 alleging 42 U.S.C. § 1983 claims. *See* CV-22-00359-TUC-JAS. Those claims were based on the Title IX allegations that underlie the investigation of Carrillo at issue in this case. Carrillo's claims were dismissed on summary judgment. No. CV-22-00359-TUC-JAS (Docs. 75, 76). Further, Carrillo filed another suit against PCCD in February 2024 alleging employment discrimination and Title IX retaliation. *See* CV-24-00123-TUC-RCC. In that suit, Carrillo alleged PCCD "damaged his employment with [NPC] in retaliation for his participation in a Title IX investigation," by sharing information about the Title IX investigation with NPC. CV-24-00123-TUC-RCC Verified Complaint (Doc. 1, ¶ 40). Carrillo voluntarily dismissed this lawsuit with prejudice. CV-24-00123-TUC-RCC (Doc. 19).

PCCD argues the claims in this case are based on the same nucleus of facts and could have been brought in an earlier action. Specifically, PCCD asserts all three lawsuits are

---

³Issue preclusion bars the "relitigation of all issues that were litigated in a prior proceeding, even if the second proceeding is an action on a claim different from the one asserted in the first action." *Shaw v. California Dept. of Alcoholic Bev. Control*, 788 F.2d 600, 605 (9th Cir. 1986). In accordance with Ninth Circuit case law, this Court will use the terms "claim preclusion" and "issue preclusion", rather than *res judicata* and collateral estoppel. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 322 n. 2 (9th Cir. 1988), *citing Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1 (1984).

based on the Title IX investigation and the alleged handling of records related to the investigation. However, in the Ninth Circuit "'claim preclusion does not apply to claims that accrue after the filing of the operative complaint' in the first suit." *Media Rts. Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1021 (9th Cir. 2019), *citation omitted*. The current lawsuit, in addition to being based on the Title IX investigation and the alleged handling of records related to the investigation, also specifically alleges the disclosure of information to NPC in June 2023, almost a year after the operative complaint in the first lawsuit was filed in September 2022. In other words, Carrillo's claims in this suit could not have been fully developed at time of the filing of the operative complaint in CV-22-00359-TUC-JAS. The Court finds Carrillo's claims in this case had not accrued when Carrillo filed the operative complaint in the first lawsuit. Therefore, claim preclusion does not apply to the claims in the first lawsuit.

As to the operative complaint in Carrillo's second lawsuit, in establishing identity of claims, the Court considers, but "'do[es] not apply mechanistically,' whether: (1) 'the two suits arise out of the same transactional nucleus of facts'; (2) 'rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action'; (3) 'the two suits involve infringement of the same right'; and (4) 'substantially the same evidence is presented in the two actions.'" *Mpoyo v. Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005), *citation omitted*. The Ninth Circuit has "often held the common nucleus criterion to be outcome determinative under the first res judicata element." *Mpoyo*, 430 F.3d at 988; *see also GP Vincent II v. Est. of Beard*, 68 F.4th 508, 515 (9th Cir. 2023). A "transaction test" is used "to determine whether the two suits share a common nucleus of operative fact," which asks "whether [the claims] are related to the same set of facts and whether they could conveniently be tried together." *Mpoyo*, 430 F.3d. at 987; *see also Garity v. APWU Nat'l Lab. Org.*, 828 F.3d 848, 855 (9th Cir. 2016).

PCCD argues the Carrillo's claim for Title IX retaliation in the second lawsuit was based on PCCD contacting NPC and informing NPC of the Title IX investigation of

1  Carrillo.  Specifically, Carrillo alleged PCCD had damaged his employment with NPC by
2  sharing with NPC information regarding the Title IX investigation in retaliation for
3  Carrillo's participation in the Title IX investigation.  Similarly, Carrillo's Title IX retaliation
4  claim in this lawsuit is based on PCCD sharing with NPC what is alleged to be a misleading
5  police report that was created during the Title IX investigation.  Carrillo alleges in this case
6  the police report falsely implied Carrillo was still under criminal investigation and NPC
7  rescinded Carrillo's job offer as a result of PCCD's actions.  Carrillo's claims for Title IX
8  retaliation, defamation, and tortious interference are all based on the disclosure of
9  information to NPC on or about June 7, 2023.
10  Carrillo asserts, however:
11  Additionally, while Plaintiff previously dismissed a separate lawsuit involving earlier PCC conduct, the present complaint arises from new facts specifically, conduct discovered through subpoenaed records in November–December 2024 none of which had been litigated or adjudicated.
12
13
14  Response (Doc. 18, p. 2).  Although Carrillo does not specify what "new facts" or "conduct"
15  was discovered, a review of the operative complaint from Carrillo's second lawsuit indicates
16  Carrillo alleged at that time PCCD contacted NPC "and informed them of the investigation
17  to retaliate against Dr. Carrillo for participating in the Title IX investigation." CV-24-
18  123-JCH Complaint (Doc. 1, p. 5).  There is no mention that any documentation was
19  provided to NPC from PCCD.  In this case, Carrillo alleges PCCD released the misleading
20  police report itself to NPC.
21  In other words, it appears Carrillo alleged in the second lawsuit that PCCD provided
22  information to NPC by undisclosed means, but in this case Carrillo alleges this information
23  was provided in documentation.  It appears the distinction between the two cases is the
24  method, content, and extent of the information disclosed to NPC.  However, the two cases
25  share the common nucleus of operative facts that PCCD disclosed information to NPC. The
26  method, content, and extent of the disclosure are related to the same set of facts and they
27  could conveniently be tried together. Indeed, it is not that the method of disclosure presents
28  unrelated matters, *see e.g. Robinson v. City of Phoenix*, No. CV10-1044 PHX DGC, 2010

WL 4054167, at *3 (D. Ariz. Oct. 15, 2010), but provides additional evidence of the same basic nucleus of facts that PCCD disclosed information to NPC. In fact, substantially the same evidence would need to be presented in both Carrillo's second case and this lawsuit.

Indeed, "[t]he fact that some different evidence may be presented in this action . . . does not defeat the bar of res judicata." *International Union of Operating Engineers–Employers Constr. Industry Pension, Welfare and Training Trust Funds v. Karr*, 994 F.2d 1426, 1430 (C.A.9 1993); *Adams v. California Dep't of Health Servs.*, 487 F.3d 684, 690 (9th Cir. 2007), *overruled on other grounds*, *see also* Restatement (Second) of Judgments § 25, Comment b (update Oct. 2024) ("A mere shift in the evidence offered to support a ground held unproved in a prior action will not suffice to make a new claim avoiding the preclusive effect of the judgment"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4403 (3d ed.) (update May 2025) (res judicata "ordinarily applies despite the availability of new evidence"); Restatement of Judgments § 1, Comment b (update 2024) (ordinary rules of claim preclusion apply "although the party against whom a judgment is rendered is later in a position to produce better evidence so that he would be successful in a second action").

Additionally, a dismissal with prejudice in federal court "constitutes a final judgment on the merits and precludes a party from reasserting the same claims in a subsequent action *in the same court*." *Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005) (recognizing suit in another court may not have a preclusive effect), *emphasis added*; *see also Rumbo Perez v. Espinoza*, No. EDCV192190JGBSPX, 2020 WL 2095804, at *5 (C.D. Cal. Jan. 21, 2020). Moreover, the Court agrees with PCCD that its freedom from liability, established in the prior judgment, would be impaired by this litigation.

The Court finds there is an identity of claims in the second lawsuit and the current litigation, a final judgment was entered in the second case, and there is privity between the parties. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077 (9th Cir. 2003). Carrillo's claims are barred by claim preclusion.

2. *Notice of Claim Statute*

a. *Applicability of Notice of Claim Statute*

A.R.S. § "12-821.01(A) requires a person who has a claim against a [public entity or a public employee] to file the claim [with the person authorized to accept service or the individual public employee] within 180 days 'after the cause of action accrues.' Any claim not filed within that time 'is barred and no action may be maintained thereon.'" *Barth v. Cochise County, Arizona*, 138 P.3d 1186, 1189 (Ariz.App. 2006), *citation omitted*. This "requires that those persons asserting claims against pubic entities or public employees do so by *actually delivering* or ensuring that the actual delivery of the notice of claim to the appropriate person within the statutory period." *Lee v. State*, 161 P.3d 583, 587 (Ariz.App. 2007). "This requirement "constitutes a 'procedural rather than a jurisdictional requirement[.]'" *McGrath v. Scott*, 250 F.Supp.2d 1218 (D.Ariz. 2003).

Additionally, as recognized by PCCD, the Notice of Claim statutes applies only to state law claims:

> It has been the law for more than two decades, however, that "[a] civil rights plaintiff cannot be required by state law to give a prospective defendant 'notice' of an intention to sue because § 1983, which exists to vindicate important federally created rights, preempts state notice-of-claim statutes." *Ellis v. City of San Diego, Cal.*, 176 F.3d 1183, 1191 (9th Cir. 1999) (citing *Felder v. Casey*, 487 U.S. 131, 153 (1988)).

*Jones v. Town of Quartzsite*, No. CV-13-02170-PHX-DJH, 2015 WL 12551172, at n. 8 (D. Ariz. Mar. 30, 2015), aff'd, 677 F. App'x 317 (9th Cir. 2017) *see Moreno v. Saavedra*, No. CIV 17-432-TUC-CKJ, 2020 WL 1308015, at *2 (D.Ariz. Mar. 19, 2020).

Here, Carrillo asserts that he not only provided actual and substantial notice to PCCD, but because the primary claim in this case is a federal Title IX claim, the state claims arise under the Court's supplemental jurisdiction. Although Carrillo cites to *Felder v. Casey*, 487 U.S. 131 (1988), in support of this assertion, *Felder* recognized "the outcome of the litigation in the federal court should be substantially the same, so far as legal rules determine the outcome of a litigation, as it would be if tried in a State court" when federal court exercises pendent jurisdiction over state law claims. *Id*. at 151. Further, cases

addressing this issue have determined supplemental jurisdiction does not override notice of claim requirements. *See e.g., Larsgard v. Mendoza*, No. CV12-8013-PCT-DGC, 2012 WL 3704680, at *2 (D. Ariz. Aug. 28, 2012) (dismissal of state tort claim despite supplemental jurisdiction); *Goff v. State*, No. 1 CA-CV 23-0220, 2024 WL 1733931, at *3 (Ariz. Ct. App. Apr. 23, 2024) (although specific issue was not discussed, plaintiff's assertion of supplemental jurisdiction did not obviate his need to comply with A.R.S. §12-821.01; *Roland v. City of New York*, No. 20-CV-05392 (TMR), 2024 WL 2832691, at *9 (S.D.N.Y. June 3, 2024) (New York's notice of claim statute is strictly construed and applies equally to pendent claims in federal court).

Indeed, Arizona has made clear that the statute's requirements are to be strictly applied. *Nored v. City of Tempe*, 614 F. Supp. 2d 991, 995 (D. Ariz. 2008). As such, the Court finds supplemental jurisdiction does not override notice of claim requirements. To any extent Carrillo seeks compensatory or punitive damages for his state law claims, Arizona's Notice of Claim statute requires dismissal.

However, the Ninth Circuit has stated:

> As interpreted by the courts of Arizona, this statute does not apply to claims for declaratory judgment, *Martineau v. Maricopa County*, 207 Ariz. 332, 86 P.3d 912, 915 (Ariz. Ct. App. 2004), or for injunctive relief, *State v. Mabery Ranch, Co.*, 216 Ariz. 233, 165 P.3d 211, 222–23 (Ariz. Ct. App. 2007).

*Platt v. Moore*, 15 F.4th 895, 901 (9th Cir. 2021). In this case, Carrillo seeks declaratory damages as to his state law claim of defamation. However, Carrillo only seeks compensatory and punitive damages as to his claim for tortious interference with his employment. The Court finds Arizona's Notice of Claim statute does not apply to Carrillo's claim for declaratory damages as to his defamation claim, as well as the federal claims, but the Notice of Claim statute applies to his defamation claim as to compensatory/punitive damages and to his tortious interference claim.

b. *Accrual of Claims*

The Notice of Claim statute also provides that a cause of action accrues when "the damaged party realizes he or she has been damaged and knows or reasonably should know

- 12 -

the cause, source, act, event, instrumentality or condition that caused or contributed to the damage." A.R.S. § 12-821.01(B). Accrual is triggered when a plaintiff possesses at least a minimum requisite of knowledge sufficient to identify that a wrong occurred and caused injury," but the plaintiff "need not know all the facts underlying the cause of action[.]" *Doe v. Roe*, 955 P.2d 951, 961 (Ariz. 1998).[4] While when a cause of action accrues is generally a question of fact for a jury, the issue may be decided as a matter of law if the record shows when a plaintiff was "unquestionably . . . aware of the necessary facts underlying their cause of action." *Thompson v. Pima County*, 226 Ariz. 42, 47, 243 P.2d 1024, 1029 (App. 2010). Further, the question is not when a plaintiff was conclusively aware he had a cause of action against a particular party; rather, the issue is when "a reasonable person would have been on notice to investigate." *Cruz v. City of Tucson*, 401 P.3d 1018, 1021 (Ariz.App. 2017), *citation omitted*.

PCCD points out that the SAC alleged PCCD released the alleged misleading police report to NPC, on or about June 7, 2023. The Court acknowledges that some persons, having a job offer being rescinded while allegations of misconduct against those persons are being investigated, might trigger those persons to investigate whether that was a factor in the recission. However, that does not necessarily mean a reasonable person would do so. Indeed, the Court cannot say Carrillo was, or a reasonable person would have been, "unquestionably . . . aware of the necessary facts underlying their cause of action" as a matter of law in June 2023. *Thompson*, 243 P.2d 1024 at 1029. (App. 2010). Significantly, Carrillo's complaints do not state when Carrillo learned of the contact between PCCD and NPC; i.e., Carrillo does not allege that NPC, when it demanded Carrillo withdraw his acceptance of the new position or face a recission of the offer, informed him of the information from PCCD.

However, the Court has determined, in light of judicial notice and reasonable

---

[4] Arizona courts apply this trigger to both the one-year statute of limitations and the 180-day notice of claim period for claims against public entities. *See Power Road-Williams Field, LLC v. Gilbert*, 14 F. Supp.3d 1304, 1310 (D. Ariz. 2014).

- 13 -

1  inferences, Carrillo knew or believed on February 29, 2024, that PCCD provided
2  information/documents to NPC around the time of the job recission. In other words,
3  Carrillo was on notice no later than February 29, 2024, the factual basis of the claims
4  alleged in this case. Carrillo, therefore, had until August 27, 2024 (180 days after Carrillo
5  "knew" of the claims or the claims are barred and no action may be maintained on them.
6  *Barth*, 138 P.3d at 1189. However, Carrillo did not initiate this litigation until January 24,
7  2025. The Court finds Carrillo has not complied with Arizona's Notice of Claim statute;
8  therefore, his defamation claim as to damages and his tortious interference claim are barred.

### 3. *Statute of Limitations*

PCCD argues Carrillo's state law claims are barred under the Arizona statute of limitations. Arizona's statute of limitations as to public entities states that any action "against any public entity or public employee shall be brought within one year after the cause of action accrues and not afterward." A.R.S. § 12-821.[5] Such claims accrue "when the damaged party realizes he or she has been damaged and knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." A.R.S. § 12-821.01(B). Carrillo argues, however, that his claims did not accrue until November or December of 2024 when he "discovered the full extent of the harm" from subpoenaed documents. Response (Doc. 18, p. 3).

"Arizona courts have concluded that 'the legislature intended the same discovery rule to apply to both the filing of the notice of claim and the filing of the complaint against public entities or employees.'" *Cervantez v. Graham Cnty.*, No. CV-10-0419-TUC-CKJ, 2011 WL 860329, at *5 (D. Ariz. Mar. 11, 2011), *citations omitted*. Here, the Court has determined the claims accrued no later than February 29, 2024, for purposes of the Notice of Claim statute. The Court finds, therefore, the statute of limitations in this case began to

---

[5]*See also* A.R.S. § 12–541(1) (claims for injuries done to the character or reputation of another by libel or slander must be filed within one year).

accrue on February 29, 2024. Carrillo initiated this litigation on January 24, 2025. Carrillo's state law claims were filed within the requirements of Arizona's statute of limitations.

### 4. *Adequacy of Allegation of Defamation*

"Defamation is composed of libel and slander. Oversimplifying, libel is a written or visual defamation, while slander is an oral defamation." *Boswell v. PhoenixNewspapers, Inc.*, 730 P.2d 178, 183 n. 4 (Ariz.App. 1985), *citation omitted*. The Court of Appeals of Arizona has summarized:

> A defendant is liable for defaming a private person if he knowingly or recklessly publishes a false and disparaging communication concerning that person to a third party. *Peagler v. Phoenix Newspapers, Inc.*, 114 Ariz. 309, 315, 560 P.2d 1216, 1222 (1977). A statement is not defamatory unless it "is capable of bearing a defamatory meaning." [*Yetman v. Eng.*, 811 P.2d 323, 331 (Ariz. 1991)]. As a matter of law, a statement is not actionable if it cannot reasonably be interpreted as stating or *implying facts "susceptible of being proved true or false."* [*Milkovich v. Lorain J. Co.*, 497 U.S. 1, 21 (1990)]. Put simply, the plaintiff must show that the statement is "provable as false before a defamation action can lie." *Turner v. Devlin*, 174 Ariz. 201, 205, 848 P.2d 286, 290 (1993). Accordingly, "[t]he key inquiry is whether the challenged expression, however labeled by [the] defendant, would reasonably appear to state or imply assertions of objective fact." [*Yetman*, 811 P.2d at 328] (citation omitted).
>
> In determining whether a statement is defamatory, the court must consider "the impression created by the words used as well as the general tenor of the expression, from the point of view of a reasonable person at the time the statement was uttered and under the circumstances it was made." [*Sign Here Petitions LLC v. Chavez*, 402 P.3d 457, 463 (Ariz.App. 2017)] (internal quotation omitted). If a court determines that the publication is incapable of a defamatory meaning, the claim is subject to dismissal. *See* [*Yetman*, 811 P.2d at 331]; *see also Reynolds v. Reynolds*, 231 Ariz. 313, 317-18, ¶¶ 9, 12, 294 P.3d 151, 155-56 (App. 2013).

*BLK III, LLC v. Skelton*, 506 P.3d 812, 817 (Ariz.App. 2022), *as amended* (Feb. 17, 2022), *emphasis added*. Additionally, "[t]o be defamatory, a publication must be false, and truth is a defense." *Godbehere v. Phoenix Newspapers, Inc.*, 162 Ariz. 335, 341, 783 P.2d 781, 787 (1989).

Carrillo's SAC does not specify what false information was provided to NPC from PCCD, but conclusorily alleges the disclosure of the police report was misleading because PCCD knew the case had been dismissed ten months earlier and the police report falsely

implied Carrillo was still under criminal investigation. In his response, Carrillo also argues the records "omitted key exculpatory findings and included protected Title IX-related content, thereby creating a false impression of ongoing misconduct when no such proceedings were active." Response (Doc. 18, p. 3). Carrillo has attached 5 of 17 pages of the Detail Incident Report (i.e., police report) to his response. Response, Exs. (Doc. 18-1, ECF pp. 8-12).[6]

The Court has reviewed the police report in light of considering whether its disclosure can or cannot reasonably be interpreted as stating or implying facts susceptible of being proved true or false. *Milkovich*, 497 U.S. at 21. Simply put, a plain reading of the police report, along with its disclosure, does not imply whether or not charges had been filed or whether Carrillo was still under criminal investigation. Further, the omission of alleged key exculpatory findings does not lead to any implications. Indeed, Carrillo alleges no facts to support this conclusory allegation. It is only when the Court also considers the communications between NPC and the PCCD Police Chief in which an NPC employee refers to an apparent non-PCCD police chief who stated Carrillo "was allegedly terminated because of criminal charges that were brought against him[,]" Response, Ex. (Doc. 18-1, p. 4 of 12), that any false or misleading implication is made. However, that statement is not alleged to have been made by PCCD.

The Court finds Carrillo has failed to adequately allege the police report, and its disclosure, implies provable falsity. In other words, Carrillo has failed to adequately allege a defamation claim against PCCD upon which relief can be granted.

### 5. *Adequacy of Allegation of Tortious Interference*

Under Arizona law, a claim for tortious interference with contract or business

---

[6] Carrillo cites to *Dowling v. Arpaio*, 151 P.3d 717 (Ariz. Ct. App. 2007) in support of his argument that disclosure to NPC despite the case having been dismissed substantially influenced NPC's view of Carrillo. However, this citation refer to another case. *See In re Guardianship of Carlsmith*, 113 Haw. 236, 151 P.3d 717 (2007).

expectancy requires:

> (1) the existence of a valid contractual relationship or business expectancy; (2) defendant's knowledge of the relationship or expectancy; (3) defendant's intentional interference in inducing or causing the breach; (4) defendant's interference must be improper; and (5) resulting damages. [*Citations omitted.*] The business expectancy alleged must be more than a "speculative hope." [*Citation omitted.*] The plaintiff "must also prove the defendant acted with improper motive or improper means." [*Citation omitted.*]

*Wolf Designs LLC v. Five 18 Designs LLC*, 635 F. Supp. 3d 787, 799 (D. Ariz. 2022).

PCCD points out Carrillo's SAC does not allege PCCD knew of, and intentionally interfered with, Carrillo's expectancy of employment with NPC. Indeed, Carrillo has not alleged the disclosure resulted from contact initiated by PCCD to NPC; rather, a third-party apparently provided information to NPC, who then sought additional/confirming information from PCCD.

The parties dispute the significance of the disclosure of the police report *after* NPC's job offer had been rescinded. Because the recission of the job offer occurred on or about June 1, 2023, prior to PCCD's release of the police report to NPC on June 7, 2023, PCCD asserts its release of the police report could not have caused the recission six days earlier. Carrillo argues, however, the disclosure reinforced the defamatory narrative, caused reputational harm to Carrillo, and effectively foreclosed any opportunity for reconsideration or reinstatement.

The Court has considered reasonable inferences raised by Carrillo's allegation that the disclosure subsequent to the recission potentially interfered with a possible reconsideration. This allegation does not rise above a "speculative hope." *Wolf Designs*, 635 F. Supp. 3d at 799. Further, Carrillo's failure to allege PCCD knew of, and intentionally interfered with, Carrillo's expectancy of employment with NPC is fatal to his claim of tortious interference, especially in light of the contact between PCCD and NPC having been initiated by NPC. The Court finds Carrillo has failed to adequately allege a claim for tortious inference upon which relief can be granted.

### 6. *Adequacy of Allegation of Title IX Retaliation*

To state a Title IX retaliation claim, Carrillo "must allege that (1) the plaintiff participated in a protected activity, (2) the plaintiff suffered an adverse action, and (3) there was a causal link between the protected activity and the adverse action." *Grabowski v. Arizona Bd. of Regents*, 69 F.4th 1110, 1121 (9th Cir. 2023), *citing Emeldi v. Univ. of Oregon*, 698 F.3d 715, 725-26 (9th Cir. 2012). "In the Title IX context, speaking out against sex discrimination is protected activity." *Grabowski*, 69 F.4th at 1121, *citing Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 176–77 (2005).

The parties dispute whether "protected activity" for purposes of a Title IX retaliation claim applies to complaints of Title IX violations, or only sex discrimination. The Court is unaware of any case that permits a Title IX claim based on complaints of Title IX violations. Rather, when the holding in *Jackson* is considered together with the plain language of Title IX, it is apparent the alleged retaliation must still fall within the scope of 20 U.S.C. § 1681(a) (prohibition against discrimination based on sex). The *Jackson* Court stated:

> Title IX prohibits sex discrimination by recipients of federal education funding. The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). More than 25 years ago, in *Cannon v. University of Chicago*, 441 U.S. 677, 690–693, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), we held that Title IX implies a private right of action to enforce its prohibition on intentional sex discrimination. . . .
>
> In all of these cases, we relied on the text of Title IX, which, subject to a list of narrow exceptions not at issue here, broadly prohibits a funding recipient from subjecting any person to "discrimination" "on the basis of sex." 20 U.S.C. § 1681. Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action. . . . Moreover, retaliation is discrimination "on the basis of sex" because it is an intentional response to the nature of the complaint: an allegation of sex discrimination. We conclude that when a funding recipient retaliates against a person because he complains of sex discrimination, this constitutes intentional "discrimination" "on the basis of sex," in violation of Title IX.

*Jackson*, 544 U.S. at 173–74. In other words, the plain language of the statute requires discrimination based on sex.

Further, the website of the U.S. Department of Education provides:

> Recipients of federal funds are prohibited from intimidating, threatening, coercing, or discriminating against any individual for the purpose of interfering with any right or privilege secured by Title IX.

U.S. Dept. Of Educ., Retaliation, https://www.ed.gov/laws-and-policy/civil-rights-laws/protecting-students/retaliation-3 (last accessed 6/19/2025). Title IX secures rights regarding discrimination based on sex.

Carrillo's SAC alleges that he engaged in protected activity under Title IX by his filing internal complaints regarding mishandling of Title IX-related records and the unauthorized disclosure of protected information, requesting an investigation into PCCD's alleged failure to safeguard Carrillo's Title IX information, and reporting retaliation after PCCD did not correct the unauthorized disclosure of records. Carrillo has not alleged any discrimination based on sex. The Court finds Carrillo has failed to state a claim for Title IX retaliation upon which relief can be granted.

Accordingly, IT IS ORDERED:

1. Carrillo's Request for Self-Assessment of Conflict Pursuant to 28 U.S.C. § 455 (Doc. 21) is GRANTED to the extent discussed herein.

2. PCCD's Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 17) is GRANTED for some, but not all, of the reasons argued by PCCD as discussed herein.

3. Carrillo's claim against PCCD for unlawful retaliation against Carrillo under Title IX is DISMISSED as barred by *res judicata* (claim preclusion) and for failing to allege sufficient facts stating a Title IX retaliation claim against PCCD upon which relief can be granted.

4. Carrillo's claim against PCCD for defaming Carrillo for compensatory/punitive damages is DISMISSED as barred by *res judicata* (claim preclusion), precluded for failing to comply with Arizona's Notice of Claim statute, and for failing to allege sufficient facts stating a defamation claim against PCCD upon which relief can be granted. Carrillo's claim

against PCCD for defaming Carrillo for declaratory relief is DISMISSED as barred by *res judicata* (claim preclusion) and for failing to allege sufficient facts stating a defamation claim against PCCD upon which relief can be granted.

5. Carrillo's claim against PCCD for tortious interference with Carrillo's employment is DISMISSED as barred by *res judicata* (claim preclusion), precluded for failing to comply with Arizona's Notice of Claim statute, and for failing to allege sufficient facts stating a tortious interference claim against PCCD upon which relief can be granted.

6. Carrillo's Second Amended Complaint (Doc. 16) and the claims contained therein are DISMISSED.

7. The Clerk of Court shall enter judgment and shall then close its file in this matter.

DATED this 30th day of June, 2025.

_____
Cindy K. Jorgenson
United States District Judge